```
IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
       CHATTANOOGA DIVISION
```

| | |
|---|---|
| PERRIN JOHNSON )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>HABITAT FOR HUMANITY FOR )<br>GREATER CHATTANOOGA AREA, INC. )<br>)<br>**Defendant.** )<br>) | Case No. _____<br><br><br><br>JURY DEMAND. |

## COMPLAINT

Plaintiff Perrin Johnson ("Plaintiff"), by and through undersigned counsel, brings this Complaint against Defendant Habitat for Humanity for Greater Chattanooga Area, Inc. ("Defendant"), and alleges as follows:

**I.    INTRODUCTION**

1.    Plaintiff brings this action against Defendant for violations of his rights protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. 1981 and the Fair Labor Standards Act.

2.    Plaintiff seeks to correct unlawful employment practices on the basis of gender discrimination, race discrimination, and retaliation to obtain redress for

1

damages he suffered as a result of the Defendant's unlawful actions. As stated with particularity below, Plaintiff alleges that Defendant knew that he is a male who was repeatedly subjected to sexual harassment by a supervisor and was retaliated against for speaking out against the harassment when Defendant terminated his employment.

## II.     JURISDICTION & VENUE

3.      This Court has original jurisdiction of this action pursuant to 28 U.S.C. §1331.

5.      The claims asserted in this action arose in Hamilton County, Chattanooga, Tennessee; therefore, the proper venue for this action lies within the Eastern District of Tennessee pursuant to 28 U.S.C. § 1391.

## III.    THE PARTIES

6.      Plaintiff Perrin Johnson is an adult resident of Hamilton County, Tennessee, and a citizen of the United States.

7.      At all relevant times, Plaintiff was an "employee" of Defendant, who operate a Habitat for Humanity location. Defendant is an "employer" within the meaning of 42 U.S.C.S. § 2000e(b).

8. Defendant Habitat for Humanity of Greater Chattanooga Area is a nonprofit corporation with a principal office located at 1201 E. Main Street Chattanooga, TN 37408.

10. Defendant may be served with process through its registered agent Jen Christensen 1201 E Main Street Chattanooga, TN 37408-1613. (**Exhibit 1 – SOS Business**)

IV. **ADMINISTRATIVE PREREQUISITES**

11. Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII.

12. Plaintiff timely filed a Charge of Discrimination with the EEOC. (**See Exhibit 2 – Charge of Discrimination**)

13. Plaintiff timely files this Complaint within ninety days of the receipt of a Notice of Right to Sue issued by the EEOC. (**See Exhibit 3 – Right to Sue**)

V. **RELEVANT FACTS**

14. Habitat ReStores are independently owned reuse stores operated by local Habitat for Humanity organizations.

15. Defendant Habitat for Humanity of Greater Chattanooga Inc. is ecumenical Christian non-profit housing organization.

16. ReStores accept donations and sell a constantly changing inventory of diverse, high-quality merchandise to the public at a fraction of the retail price, while diverting reusable household items and building materials from area landfills.

17. Defendant operated a ReStore location at 1150 E 14th St Chattanooga, Tennessee 37408 ("R1").

18. Defendant operated another ReStore location at 9408 Apison Pike location ("R2").

19. At all relevant times Jens Christensen, white male, was Defendant's President and Chief Executive ("CEO Christensen").

20. At all relevant times Tenasa McGhee, black female, was Defendant's Chief Administrative Officer ("CAO McGhee").

21. Plaintiff Perrin Johnson ("Plaintiff" or "Mr. Johnson") volunteered between October 2021 and April 2022.

22. As a volunteer Plaintiff agreed to a background check.

23. During the hiring process Plaintiff agreed to a background.

24. In April 2022, Defendant approved with moving forward with Plaintiff's hiring.

25. Starting around May 2022 Plaintiff Perrin Johnson ("Plaintiff" or "Mr. Johnson") was employed by Defendant Habitat for Humanity of Greater Chattanooga ("Defendant" or "Habitat").

26. Plaintiff was employed as an Assistant Manager.

27. During Plaintiff's tenure he reported to Store Manager Rakita Blackmon ("Mgr. Blackmon").

28. During orientation Plaintiff presented ReStore Operations Manager Marcia Hayes ("Op. Mgr. Hayes"), African American female, with a copy of his driver's license, social security information and a copy of his birth certificate.

29. Op. Mgr. Hayes, asked Plaintiff if he was married at least three times during meeting

30. Op. Mgr. Hayes also made comments about Plaintiff's smile and teeth.

31. Following the meeting, Op. Mgr. Hayes introduced Plaintiff to CAO McGhee.

32. CAO McGhee frequently visited Plaintiff's work location.

33. CAO McGhee sat in front of his desk and closely. Opened her legs, while wearing a short, low-cut dress, exposing her under garments.

34. Plaintiff was uncomfortable with CAO McGhee's display and found an excuse to leave.

35. In June 2022, CAO McGhee's second visit, CAO McGhee interrupted Plaintiff while he was assisting a customer.

36. CAO McGhee took Plaintiff to an office, and dismissed Mgr. Blackmon, and CAO McGhee closed the door.

37. CAO McGhee told Plaintiff there was a complaint and began discussing Plaintiff's management style.

38. CAO McGhee told Plaintiff he had a "hulk-like" demeanor and said he need to get in touch with his feminine side.

39. CAO McGhee subjected Plaintiff to unwelcomed touching, when she leaned behind him, over his back, and began rubbing his shoulders saying he seemed stressed.

40. Mgr. Blackmon came into the office and asked to break a one-hundred-dollar bill for change.

41. Mgr. Blackmon observed CAO McGhee behind Plaintiff and over his shoulder.

42. Mgr. Blackmon said she needed my assistance.

43. CAO McGhee seemed annoyed with Mgr. Blackmon interrupting.

44. Mgr. Blackmon asked if him if he was okay.

45. Plaintiff responded "no."

46. Following that meeting Plaintiff as Mgr. Blackmon to never leave him in an office alone with CAO McGhee or Marcia.

47. Around July 2022, CAO McGhee asked Mgr. Blackmon to take photos of Plaintiff for the website.

48. CAO McGhee was not satisfied with the first set of photos and asked for more.

49. Mgr. Blackmon told Plaintiff that CAO McGhee that he looked like he was a member of the "silver fox club."

50. None of the photos Mgr. Blackmon took of Plaintiff appeared on the website.

51. CAO McGhee asked Plaintiff about his marital status.

52. CAO McGhee made comments about Plaintiff's beautiful teeth.

53. CAO McGhee made comments about Plaintiff's beautiful smile.

54. CAO McGhee subjected Plaintiff to unwanted touchings.

55. CAO McGhee dressed provocatively when around Plaintiff.

56. In July 2022, Plaintiff was told he was prohibited from driving Defendant's vehicles.

57. CAO McGhee required Plaintiff to sign a document to acknowledging he would not drive trucks, as he had not been trained on the Vontigo system.

58. During CAO McGhee's third visit, she discussed a pick-up Plaintiff had made with Mgr. Blackmon.

59. Plaintiff was paid an hourly wage.

60. Plaintiff worked in excess of forty hours a week, regularly working 46-48 hours a week.

61. Plaintiff was told overtime would not be paid, and not to report it.

62. However, Defendant's records show when Plaintiff entered and exited the building.

63. Plaintiff would have to perform manual labor due labor shortage and to ensure the successful operation of the location.

64. Following that meeting CAO McGhee asked Plaintiff to walk her to her car and asked him she was angry with her.

65. Plaintiff told CAO McGhee that he was a professional, that she was a married woman, and that he respected her as his superior.

66. CAO McGhee chuckled and then went on to explain that her relationship with her husband was "unconventional" and that they were together for their children's sake.

67. Plaintiff told CAO McGhee good luck and returned to the store.

68. Marcia appeared very annoyed that CAO McGhee had spoken with Plaintiff privately.

69. On or about October 24, 2022, during a meeting CEO Christianson and CAO McGhee Plaintiff and Mgr. Blackmon presented a PowerPoint presentation of a marketing plan that required funding.

70. Plaintiff was not compensated for this meeting.

71. On or about November 1, 2022, Plaintiff overheard CAO McGhee ask Mgr. Blackmon if she had slept with Lawrence Dees, former shipping and receiving clerk.

72. CAO chuckled, and apologized, when Mgr. Blackmon told her no and she was totally out of line.

73. On or about December 17, 2022, Plaintiff along with Mgr. Blackmon and other staff hosted an event themed "Santa Paws" in collaboration with Home Depot HR Director Kourtney Hedden.

74. During the 2022 company Christmas party, CAO McGhee was flirting and subjecting Plaintiff to unwanted touchings, including squeezing his biceps and shoulder.

75. Maddie Taylor, turned to Anna Katherin Loper and said, "well that was bold and inappropriate!"

76. In January 2023, CAO McGhee told Mgr. Blackmon to "tell Perrin to get his black ass on that truck, effective immediately he is to continue assisting the driver."

77. Mgr. Blackmon, turned to Plaintiff, and said "did you hear that?"

78. Plaintiff nodded yes, and CAO McGhee hung-up the phone.

79. Plaintiff and the driver were stuck experienced some difficulty during a pick up.

80. CAO McGhee told Mgr. Blackmon that the time sheets could not reflect any extra time.

81. On or About January 17, 2023, Mgr. Blackmon filed a complaint of discrimination on behalf of Plaintiff, as she had observed CAO McGhee inappropriate behavior towards Plaintiff.

82. Mgr. Blackmon's told Plaintiff she had filed compliant with the board members about CAO McGhee and Hayes treatment and was worried about retaliation.

83. On January 20, 2023, CEO Christiansen and Governess of the Board Gina Dhanani e-mailed to Plaintiff to discuss responses to statements made by a coworker.

84. On January 23, 2023, Plaintiff met with Chief Executive Officer Jens Christiansen, and board member Gina Dhanani, Caucasian female.

85. During this meeting Plaintiff reported the sexual harassment by CAO McGhee and unfair treatment by CAO McGhee and Op. Mgr. Hayes.

86. CEO Christiansen told Plaintiff there would be an investigation.

87. On January 25, 2023, CEO Christensen and two board members terminated Plaintiff's employment.

88. Defendant replaced Plaintiff with a white female.

89. Upon information and belief Plaintiff's replacement/successor was not required to drive a truck.

90. Maddie Taylor, white female, a construction manager for Defendant was not asked to transfer her driver's license from her home state.

91. On July 12, 2023, Plaintiff filed a charge of discrimination with United States Equal Employment Opportunity Commission.

## CAUSES OF ACTION

**COUNT I: TITLE VII SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT**

92. Plaintiff faced discrimination based on sex in the form of ongoing sexual harassment.

93. Plaintiff was consistently subjected to unwelcome verbal conduct of a sexual nature by his supervisors.

94. The harassment took place during work hours.

95. Plaintiff was subjected to unwanted comments and touchings.

96. The unwanted comments and touchings created a hostile work environment and constituted sexual harassment.

11

## COUNT II: TITLE VII RETALIATION

97. Plaintiff rebuked the sexual advances.

98. Plaintiff reported the sexual harassment to his immediate supervisor.

99. Plaintiff participated and supported his immediate supervisor's report of discrimination.

100. Plaintiff participated in protected activity by reporting sexual harassment and participating in the company's subsequent investigation.

101. Defendant retaliated against Plaintiff for engaging in protected activity.

102. Plaintiff suffered adverse employment actions including, but not limited to changes in terms and conditions of employment, change in job duties and opportunities, a performance improvement plan, and termination

103. Defendant's putative non-retaliatory justification for taking these actions is mere pretext intended to hide Defendants' unlawful retaliatory motive.

104. Defendants' adverse actions were willful.

## COUNT III – TITLE VII AND 1981 RACE DISCRIMINATION

105. Plaintiff as a black male was subjected to intersectional discrimination.

106. Plaintiff as a black male was subjected to racial comments and different terms and conditions of employment.

107. Defendant did not terminate the employment of white employees who did not change their license from their home state.

108. Defendant did not terminate the employment of white employees who were insubordinate to black supervisors.

## COUNT IV – OVERTIME VIOLATIONS UNDER THE FAIR LABOR STANDARDS ACT.

109. Plaintiff was paid an hourly wage.

110. Plaintiff was a non-exempt employee under the FLSA.

111. Plaintiff was entitled to time and half his regular rate of pay for all hours worked over forty hours in a week.

112. Plaintiff was told overtime would not be paid.

113. Defendant was aware that Plaintiff was working in excess of the hours reported.

114. Defendant failed to compensate Plaintiff for those hours worked over forty hours in a week.

115. Plaintiff is entitled to those unpaid wages and an equal amount in liquidated damages.

116. Defendant's violations were willful and not in good faith.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays that he be granted the following relief:

1. Enter judgment against Defendant, declare that the actions of Defendant violate Title VII, 42 U.SC. 1981, and the Fair Labor Standards Ac, and enjoin Defendant from further discriminatory or retaliatory practices;

2. Order Defendant to pay Plaintiff back pay, liquidated damages, lost benefits, and other pecuniary losses proximately caused by Defendant's unlawful conduct, including an appropriate amount to offset increased tax consequences of any lump sum payment;

3. Order Defendant to pay Plaintiff front pay and the value of future lost benefits;

4. Order Defendant to pay Plaintiff compensatory damages in an amount to be determined by a jury;

5. Order Defendant to pay Plaintiff punitive damages in an amount to be determined by a jury;

6. Order Defendant to pay all costs, disbursements, pre-judgment interest, post-judgment interest, expert witness fees, and reasonable attorney's fees as allowed by law;

7. Grant Plaintiff all such further relief as she is entitled to under law and/or as the Court deems just and proper; and

8. Plaintiff requests a jury trial in this case.

THE PLAINTIFF'S DEMAND A TRIAL BY JURY.

/s/ Daniel E. Arciniegas

Daniel E. Arciniegas (TBPR 35853)

**ARCINIEGAS LAW**

256 Seaboard Lane, Suite E105

Franklin, TN 37067

Phone: 629-777-5889

Daniel@AttorneyDaniel.com